IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) 2:19-cr-8-NR |
| NOAH LANDFRIED, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Defendant Noah Landfried and 47 co-defendants are charged with engaging in a large-scale conspiracy to traffic a variety of Schedule I, II, and III controlled substances, including heroin, cocaine, fentanyl, and synthetic cannabinoids. Part of the investigation into Mr. Landfried's alleged drug-trafficking organization involved wiretaps and video surveillance.

Mr. Landfried now moves to suppress all evidence obtained from recording devices placed inside a black Dodge Ram pick-up truck operated by his co-defendant, James Perry. [ECF 1773]. Mr. Landfried argues that the evidence "is not admissible because it was obtained by law enforcement officers in violation of [his] constitutional rights." [*Id.* at ¶ 4]. Specifically, Mr. Landfried argues that (1) the affidavits in support of the warrant applications "did not contain sufficient probable cause that evidence of criminal activity would be found inside or within the vicinity of the" pick-up truck [*id.* at ¶ 4(a)], (2) the "government failed to make the proper showing of necessity" for the wiretap and video surveillance [*id.* at ¶ 4(b)], (3) the "recordings were not properly sealed pursuant to 18 U.S.C. § 2518(8)" [*id.* at ¶ 4(c)], and (4) the "recordings were fruit of the poisonous tree as they were derived from prior illegally obtained wiretap authorizations" [*id.* at ¶ 4(e)]. After carefully

considering the parties' submissions and the record, the Court is not persuaded by Mr. Landfried's arguments.

The affidavits submitted in support of the applications contain more than enough information to support a finding of probable cause. They also make clear that wiretaps and video surveillance were necessary because other investigative techniques hadn't succeeded, wouldn't succeed, or would be too dangerous to even try. The government also complied with the statutory requirements when it filed the recordings it obtained shortly after the last extension of the original authorization expired. Without defects in the authorizations, the evidence obtained from them does not qualify as "fruit of the poisonous tree."

For these reasons, which are discussed in detail below, the Court will deny Mr. Landfried's motion.

## BACKGROUND

### I. Factual background.

In 2018, a joint task force was investigating a drug-trafficking organization that operated mainly in Western Pennsylvania. The goal of this investigation was "to determine the entire scope of the Organization and the identities of each of its members, and to then dismantle the entire organization through the acquisition of evidence to establish guilt beyond a reasonable doubt for all of the crimes committed by all of its members." [Stamper Aff., Misc. Nos. 18-230(G)-(H), p. 61].

To aid in that investigation, on October 2, 2018, the government applied to this Court for orders authorizing wiretap and video recordings of conduct occurring inside and within the vicinity of Mr. Perry's pick-up truck. [Applications, Misc. Nos. 18-230(G)-(H)]. The applications asserted that law enforcement had probable cause to believe that Mr. Landfried and Mr. Perry

played key roles in the suspected drug-trafficking organization. [*Id.*]. The applications also claimed that "other investigative procedures" had "been tried and failed, reasonably appear[ed] unlikely to succeed if continued, reasonably appear[ed] unlikely to succeed if tried, or reasonably appear[ed] to be too dangerous to attempt." [Application, Misc. No. 18-230(G), ¶ 4(c)]; *see also* [Application, Misc. No. 18-230(h), ¶ 4]. The basis for the applications was an affidavit sworn by Special Agent Keith Stamper of the Drug Enforcement Administration.

On that same day, this Court issued two orders granting the applications. [Orders, Misc. Nos. 18-230(G)-(H)]. The Court found that the government made a proper showing of probable cause to believe that Mr. Landfried, Mr. Perry, and others were engaged in drug trafficking and that the investigation warranted audio and visual surveillance of the pick-up truck. [*Id.*].

On October 30, 2018, the government asked for an extension of those authorizations, which this Court granted. [Orders, Misc. Nos. 18-230(J)-(K)]. When that extension was about to expire, the government, on November 28, 2018, asked for a second extension, which this Court also granted. [Orders, Misc. Nos. 18-230(M)-(N)]. That final extension expired on December 28, 2018.

On January 2, 2019, the government applied for an order sealing the interceptions and recordings obtained from the authorizations. [Application for Sealing Order, Misc. Nos. (I)-(N)]. This Court granted the application that same day. [Order, Misc. Nos. (I)-(N)].

## II.  Procedural background.

Law enforcement audio and video recorded Mr. Landfried while inside the pick-up truck on certain days between October 2018 and December 2018. [ECF 1879, p. 53]. Mr. Landfried now moves to suppress that evidence. [ECF

- 3 -

1773].

By operation of the Court's standing order as to all Rule 12 pre-trial motions, all co-Defendants were deemed to have joined in any motions, unless they opted out. [ECF 1714]. Following the filing of Mr. Landfried's motion, another co-Defendant, Dana Penney, filed a separate joinder seeking suppression of any "interceptions the Government intends on using against [him] at trial." [ECF 1845, ¶¶ 17-18]. In its opposition, the government argues that Mr. Landfried is the only Defendant who has established standing to move to suppress this evidence. [ECF 1879, p. 54]. The motion is now ready for disposition.

## LEGAL STANDARD

Under 18 U.S.C. § 2518(10)(a)(i), an "aggrieved person … may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted."

A communication is unlawfully intercepted if "there is a failure to satisfy any of [the] statutory requirements that directly and substantially implement congressional intent to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527 (1974). "[T]he Title III requirements can be summarized to require probable cause (pursuant to 18 U.S.C. § 2518(3)(a), (b), (d)) and necessity for the wiretap (pursuant to 18 U.S.C. § 2518(c))." *United States v. Romeu*, 433 F. Supp. 3d 631, 640 (M.D. Pa. 2020). If these requirements are not met by the wiretap applications, "then the authorization and any surveillance pursuant to it were improper." *United States v. Vento*, 533 F.2d 838, 847 (3d Cir. 1976).

Additionally, if the surveillance is improper, then the interception is unlawful under 18 U.S.C. § 2518(10)(a)(i), and "the government could not use the fruits of that surveillance at trial or to further its investigation." *Id.*

## DISCUSSION & ANALYSIS

### I.   An evidentiary hearing is unnecessary to resolve this motion.

Mr. Landfried believes that an evidentiary hearing would help in resolving the motion. [ECF 1986]. The government, on the other hand, believes that a hearing is not needed. [*Id.*]. After carefully reviewing the parties' submissions, the Court agrees that a hearing is unnecessary.

A defendant does not have a presumptive right to an evidentiary hearing on a motion to suppress. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). A "motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Id.* That's because "the purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct— its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." *Id.* Thus, to justify a hearing, a defendant's suppression motion "must set forth and identify for the court specific and concrete issues of fact material to the resolution of the defendant's constitutional claim." *Id.* (cleaned up).

Mr. Landfried's primary substantive arguments consist solely of facial challenges to the wiretap applications. Whether the applications contained sufficient statements of probable cause and necessity, can be resolved by a review of the four corners of the documents themselves. *See, e.g., United States*

*v. Dougherty*, No. 19-64, 2020 WL 3574467, at *4 (E.D. Pa. July 1, 2020) ("Because such a facial challenge does not create factual questions, an evidentiary hearing would be pointless.").

Similarly, there are no factual disputes relevant to Mr. Landfried's argument about the timing of the government's request to seal the recordings. The Court can resolve that argument by simply comparing the dates of the authorizations to the date that the government filed its application to seal.

As a result, the Court finds that a hearing would not be helpful before addressing Mr. Landfried's motion.

## II. The affidavits submitted in support of the applications established probable cause.

Mr. Landfried does not explain how the affidavits submitted in support of the applications for wiretap and video recordings of Mr. Perry's pick-up truck fail to establish probable cause. *See generally* [ECF 1773]. And the Court does not agree with his unsupported characterization.

A wiretap application must show probable cause as to three different issues. *See United States v. Armocida*, 515 F.2d 29, 35 (3d Cir. 1975). "[T]he first is that an individual has or is about to commit one of several enumerated offenses …; the second[,] that particular communications relating to the charged offense will be obtained through the interception; and third[,] that the premises where the interception will be made are being used in connection with the charged offense."[1] *Id.* (citing 18 U.S.C. § 2518(3)).

In reviewing a probable-cause determination, the "inquiry is limited to determining whether the judge had a 'substantial basis' to conclude that probable cause existed." *United States v. Toney*, 819 F. App'x 107, 110 (3d Cir.

---

[1] The drug-trafficking offense set forth in the applications is included as one of the "enumerated offenses." *See* 18 U.S.C. § 2516.

2020) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). "That is a practical, commonsense decision whether there is a fair probability that contraband or evidence of a crime will be found in particular place." *Id.* (cleaned up). For wiretap surveillance, the focus is on whether there is a fair probability that a communication related to criminal activity will be intercepted over a particular telephone or at or inside a particular location. *United States v. Urban*, 404 F.3d 754, 773 (3d Cir. 2005).

The Court focuses its analysis on the affidavit filed in support of the first applications for the wiretap and video surveillance of Mr. Perry's pick-up truck. That affidavit, on its own, supports a finding of probable cause, while the later applications for extensions build on and incorporate those core averments.

This initial affidavit established that the affiant, Agent Stamper, is a federal law enforcement official who has extensive training and expertise in drug law enforcement and, specifically, wiretaps. *See, e.g.*, [Stamper Aff., Misc. Nos. 18-230(G)-(H), pp. 1-5]. It identified the specific known targets of the investigation, which included, among others, Mr. Landfried and Mr. Perry. [*Id.* at pp. 5-7]. It summarized incriminating evidence of drug-trafficking activity obtained from a Toyota 4Runner believed to be owned by Mr. Landfried. [*Id.* at pp. 11-13]. It outlined information relayed by a confidential source about Mr. Landfried's suspected drug-trafficking activity. [*Id.* at pp. 13-19]. It then summarized several intercepted telephone conversations that suggested Mr. Landfried and Mr. Perry were supplying narcotics, including heroin and cocaine, to other co-Defendants. [*Id.* at pp. 19-24, 27-30]. It detailed how tracking devices and physical surveillance revealed that Mr. Landfried and Mr. Perry may have traveled to New Jersey in the pick-up truck to be re-supplied with narcotics. [*Id.* at pp. 43-55]. Agent Stamper also conveyed that Mr. Perry would regularly use his pick-up truck as a base of

operations for his suspected drug-trafficking activity—routinely conducting meetings and suspected transactions inside the vehicle. [*Id.* at pp. 55-61].

Based on these facts alone, the affidavit, on its face, provided enough information to furnish probable cause that Mr. Landfried, and others, had and would continue to commit drug-trafficking offenses.[2] *See, e.g.*, *United States v. Romeu*, 433 F. Supp. 3d 631, 643 (M.D. Pa. 2020) (affidavit furnished sufficient probable cause on its face for wiretap where it set out "Romeu's prior history of being involved in narcotics trafficking" and detailed "the extensive information obtained previously in the investigation" supporting a belief that "Romeu was supplying methamphetamine"); *United States v. Wilson*, No. 16-93, 2018 WL 1293114, at *2 (D. Del. Mar. 13, 2018) (finding probable cause for a wiretap where the "affidavit contain[ed] information from seven confidential sources" and "ten controlled purchases of heroin and/or cocaine").

In addition, because the investigation revealed that Mr. Perry regularly used the target vehicle as his "mobile office," the affiant reasonably concluded that placing a wiretap inside the vehicle would yield conversations about drug-trafficking activity. *See United States v. Santiago-Pagan*, No. 08-424, 2009 WL 10677821, at *3 (M.D. Pa. July 10, 2009) ("[W]e believe that the information contained in the July affidavit established that Matos would soon be committing drug trafficking crimes, that communications regarding these

---

[2] The Court also finds that other wiretap applications submitted in connection with the investigation contain additional facts that also establish probable cause. *See, e.g.*, [Stamper Aff., Misc. No. 18-230(A), pp. 7-43; Stamper Aff., Misc. No. 18-230(B), pp. 7-43; Stamper Aff., Misc. No. 18-230(C), pp. 7-50; Stamper Aff., Misc. No. 18-230(D), pp. 7-49; Stamper Aff., Misc. No. 18-230(E), pp. 7-40; Stamper Aff., Misc. No. 18-23(F), pp. 8-57]. And each successive application incorporated by reference the probable-cause information in the prior applications and then added to it based on the most recent results of the investigation. [ECF 1879, p. 60].

crimes could be obtained through interception of his phone communications, and that Target Phone 1 would be the device through which these communications were established.").

Considering the foregoing, the Court finds that the applications were supported by probable cause. Thus, the Court will deny Mr. Landfried's motion to the extent that it turns on an argument the applications lacked probable cause.

### III. The affidavits also established necessity.

Mr. Landfried next contends that the government failed to make the proper showing of necessity because normal investigative techniques were possible and practicable. [ECF 1773, ¶ 4(b)-(c)]. Mr. Landfried, however, does not identify what those other techniques were, or how they would have succeeded in achieving the investigative goals in this case. After an independent review, the Court disagrees with Mr. Landfried's assessment.

For the necessity requirement, "an application for authorization of a wiretap must contain a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Romeu*, 433 F. Supp. 3d at 649 (citing 18 U.S.C. § 2518(1)(c)). This requirement is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 (1974). But that does not mean the government must "exhaust all other investigative procedures before resorting to electronic surveillance." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997). Instead, the government "need only lay a 'factual predicate' sufficient to inform the [authorizing judge] why other methods of investigation are not sufficient." *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir. 1992)

(quoting *Armocida*, 515 F.2d at 38). The Third Circuit has described the government's burden of proof in this regard as "not great." *Armocida*, 515 F.2d at 38. It "is sufficient for the government to describe why other investigatory techniques are impractical under the circumstances." *Santiago-Pagan*, 2009 WL 10677821, at *4 (citation omitted).

In evaluating necessity in the context of a conspiracy investigation, the court must consider the application given the specific goals pursued by the investigation at hand. *United States v. Bailey*, 840 F.3d 99, 116 (3d Cir. 2016) (citations omitted). That's because "even where normal investigative techniques might have been sufficient to implicate the conspiracy leader in drug trafficking, such approaches are sometimes insufficient to determine the scope of the conspiracy or the nature of the conspiracy leader's on-going criminal activity[.]" *Id.* In ferreting out the full scope of a drug-trafficking conspiracy, wiretap evidence has been described as the "gold standard." *United States v. Canales Gomez*, 358 F.3d 1221, 1227 (9th Cir. 2004).

Applying these principles to the circumstances of this case, the Court finds that the affidavits establish necessity.

The stated purpose of the investigation was "to determine the entire scope of the Organization and the identities of each of its members, and to then dismantle the entire Organization through the acquisition of evidence sufficient to establish guilt beyond a reasonable doubt for all of the crimes committed by all of its members." [Stamper Aff., Misc. Nos. 18-230(G)-(H), p. 5]. In other words, rather than simply trying to obtain evidence sufficient to implicate Mr. Landfried or Mr. Perry in a crime, the investigating agents were taking on the more challenging task of attempting to uncover and dismantle the drug-trafficking ring they allegedly ran in its entirety. Despite best efforts, law enforcement could not achieve that goal through other investigative

techniques. For example, a review of just the first affidavit in support of the application for electronic surveillance of Mr. Perry's pick-up truck reveals the following:

- Intercepted communications from phones were insufficient because targets stopped using them, wouldn't discuss drug trafficking details during calls, or would communicate over phones that were not being intercepted [*id.* at p. 63];

- Pen registers could not (1) "record the identity of the parties to the conversation," (2) "conclusively identify the nature or substance of the conversations, and (3) "differentiate between legitimate calls and calls for criminal purposes" [*id.* at p. 65];

- Physical surveillance alone could not conclusively establish the identities of various conspirators or the locations of drugs and drug proceeds and that "prolonged or regular physical surveillance of the conspirators would most likely be noticed causing them to become more cautious in their illegal activities, to flee to avoid further investigation and prosecution, cause a real threat to the safety of informants, or otherwise compromise the investigation" [*id.* at pp. 66-67];

- Pole cameras took too long to be installed, and even after they are installed, would only give agents a view of "a limited area" [*id.* at pp. 70-71];

- Grand jury testimony or witness interviews would be unlikely to succeed because people with knowledge of the suspected criminal organization would "likely be uncooperative and would likely invoke their Fifth Amendment privilege not to speak or testify," and those subjects could compromise the investigation by alerting other members of the organization [*id.* at p.76];

- Confidential sources could provide some, but not all, of the necessary details for the investigation because those sources could not "sufficiently and consistently infiltrate the Organization's operations" since it consisted of conspirators that were "connected by friendship and/or family ties" who were likely to "harbor serious suspicions about the intentions and origin of any new 'member'" [*id.* at pp. 77-78];

- Searches would not succeed because the "acquisition of inside information about the operations of a drug trafficking organization is very important in determining not only where to search, but also when to search" [*id.* at p. 81];

- A review of financial records could only potentially reveal the "acquisition of assets and possession of cash" that is "probative," but not determinative, of drug trafficking activity [*id.* at p. 87];

- Mail covers are limited and could alert postal workers to the ongoing investigation [*id.* at p. 87]; and

- GPS surveillance could only reveal routes of travel, it could not reveal why the targets were traveling to each location or whom they were meeting while there [*id.* at pp. 89-92].

Given the foregoing, and the fact that Mr. Perry appeared to use his pick-up truck as his base of operations for suspected drug-trafficking activity, the government more than provided the requisite factual predicate to satisfy the necessity requirement. *See, e.g., United States v. Cannon*, 685 F. App'x 114, 116 (3d Cir. 2017) (finding necessity requirement satisfied where affidavit discussed target subjects' ability to "spot surveillance and flee," confidential informants' "fear of reprisal," and difficulty infiltrating drug-trafficking organization hierarchy); *United States v. Heilman*, 377 F. App'x 157, 186 (3d Cir. 2010) ("A plain reading of the affidavits reveals that the affiant offered a detailed description of why the inherent limitations of pen registers, tracing devices, and similar investigatory tools would be insufficient in *this* case. The affiant explains that these tools would be insufficient to aid law enforcement in obtaining the information it needed, specifically, the location of co-conspirators, information about the Breed's source, or how deliveries occur, in order to prosecute these individuals.").

## IV. The government did not unreasonably delay in sealing the recordings.

Title III requires that "[t]he contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. … Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518(8)(a). The primary thrust of this requirement is to "ensure the reliability and integrity of evidence obtained by means of electronic surveillance." *United States v. Ojeda Rios*, 495 U.S. 257, 264 (1990). A violation "requires suppression if the sealing was not 'immediate' and if the government fails to provide any 'satisfactory explanation for the delay.'" *United States v. Bansal*, 663 F.3d 634, 651 (3d Cir. 2011) (cleaned up).

"Whether a sealing occurred as soon as practical after the expiration of an order is a question of fact for the district court." *United States v. Carson*, 969 F.2d 1480, 1497 (3d Cir. 1992). "As soon as practical" means "as soon as is reasonably feasible given the administrative procedures which necessarily must be undertaken prior to sealing." *Id.* at 1496. "If the Court finds that the sealing did not occur as soon as practical, then it must determine whether the government has provided an objectively reasonable and satisfactory explanation for the delay in sealing." *Romeu*, 433 F. Supp. 3d at 669. The Third Circuit has recognized that "there may be limited special circumstances apart from the administrative practicalities of obtaining a sealing order that would justify some delay." *Carson*, 969 F.2d at 1498.

Here, the government applied to seal the recordings from Mr. Perry's pick-up truck on January 3, 2019. [Application, Misc. Nos. 18-230(M)-(N)].

The last authorization for the electronic surveillance expired on December 28, 2018. [Order, Misc. Nos. 18-230(M)-(N)]. Between those two dates was a weekend and the New Year's Day holiday. Given those circumstances, the Court does not find that there was any "unreasonable delay" in the sealing of the recordings. *See, e.g.*, *United States v. Williams*, 124 F.3d 411, 429-30 (3d Cir. 1997) (holding that an intervening weekend may reasonably delay the time that it is practical to seal the record); *United States v. Mastronardo*, 987 F. Supp. 2d 545, 558 (E.D. Pa. 2013) ("Sealing after a six-day delay is immediate when the delay includes an intervening weekend.").

### V. The evidence obtained was not fruit of the poisonous tree.

Finally, Mr. Landfried argues that "the recordings were fruit of the poisonous tree as they were derived from prior illegally obtained wiretap authorizations." [ECF 1773, ¶ 4(e)]. But Mr. Landfried does not identify the "prior illegally obtained wiretap authorizations," explain how those wiretap authorizations were illegal, or attempt to connect those authorizations to the authorizations for wiretap and video recordings of Mr. Perry's pick-up truck. As a result, Mr. Landfried has not provided the Court with any of the essential information necessary to support this argument.

That fundamental failure aside, as discussed above, the Court finds that the authorizations at issue were validly ordered, so Mr. Landfried's final argument does not pass muster.[3]

---

[3] Because the Court is denying the motion, it need not address whether Mr. Penney independently has standing to join the motion. The denial of the motion will be effective as to all Defendants.

## **CONCLUSION**

For these reasons, the Court will deny Mr. Landfried's motion to suppress [ECF 1773]. An appropriate order will follow.

DATED this 1st day of December, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge